**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**


FRANK W. ASKEW, JR.                                                                PLAINTIFF
ADC #082276


V.                                    4:09-cv-00058-JMM-JJV


RICHARD SCOTT, Deputy, Pulaski County
Detention Facility; EDDIEMAE BANKS,
Classification Officer, Pulaski County Detention
Facility; MICHELLE BAILEY CONNERS,
Classification Officer, Pulaski County Detention
Facility; and DONNA SPENCER, Nurse,
Pulaski County Detention Facility [1]                                      DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James

M. Moody.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in a waiver of the right to appeal questions of fact.

--------

[1] At the hearing and in their Answer (Doc. No. 47), the Defendants provided their full
and complete names.  The Clerk of the Court is directed to correct the docket notations
accordingly.

1

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff, presently in the custody of the Arkansas Department of Correction at the East Arkansas Regional Unit, filed the instant 42 U.S.C. § 1983 cause of action on January 26, 2009. Plaintiff raises various claims of deliberate indifference to his seizure disorder and due process claims regarding his placement in administrative segregation at the detention center. Only Plaintiff's due process claim remains because the district court previously dismissed his other claims. *See* Doc. No. 27.  Plaintiff's remaining claim alleges that he was denied due process by the Defendants while a pre-trial detainee at the Pulaski County Regional Detention Facility.   Plaintiff did not request a jury trial, so the Court conducted an evidentiary hearing on December 1, 2009.  Following the

presentation of witness testimony and documentary evidence,[2] the Court now makes the following recommendations of findings of fact and conclusions of law based upon the preponderance of the evidence:

## I.      Facts

Plaintiff was arrested on November 16, 2008, and remained in custody at the Pulaski County Regional Detention Facility (PCRDF) until he was remanded to the custody of the Arkansas Department of Correction following separate convictions for robbery and aggravated assault on a correctional officer.   On January 8, 2009, the date of events giving rise to his placement in administrative segregation, Plaintiff was housed in the detention center's medical unit – "L-Unit." Because of his epilepsy, Plaintiff was assigned to a bunk in the center common area of L-Unit instead of a cell.   Plaintiff stated his placement outside of a cell was required so he could be appropriately monitored in the event of a seizure.

Two events occurred that day which resulted in Plaintiff's placement in administrative segregation. First, during "pill call" conducted by the detention center's nurse, Defendant Spencer, Plaintiff attempted to intervene in the distribution of medication to another inmate and "had words" with Defendant Spencer.   As a result of this disorderly conduct, officers had to intervene to get control of Plaintiff.   Plaintiff was generally non-compliant with officers' orders and continued to "mouth off."   Shortly after this altercation, Plaintiff was also involved in a verbal argument with another inmate.

---

[2] At the hearing, Plaintiff also submitted a Motion for Reconsideration/Motion *in Limine* (Doc. No. 58) challenging the undersigned's decision in an Order dated November 23, 2009 that refused his request to call a fellow inmate, Curtis Vance, as a witness.  The request for reconsideration was denied on the record at the hearing, and Plaintiff was advised he could raise that, and any other issues, in his objections to this recommendation if he was not satisfied with the decision.  Also on the record is Plaintiff's withdrawal of the request for a continuance of this hearing that was contained in his motion.

As a result of Plaintiff's argument with the nurse and the other inmate, Defendant Scott instructed Plaintiff to gather his belongings because he was moving to a cell.  Plaintiff argued with Defendant Scott and insisted movement to a cell was against detention center orders because of his seizures.  Defendant Scott called for his superiors, and Sgts. Berry and Smith (who are no longer defendants in this case) came to the unit.  According to Defendant Scott, Sgt. Berry spoke with medical personnel who reported that Plaintiff's restrictions were limited to "lower level, lower bunk," and not a prohibition on being placed in a cell. Officers then proceeded to locate an available cell and Plaintiff was placed in that cell.  Inexplicably, officers placed Plaintiff in a cell with the inmate with whom he had been arguing.  While in the cell, Plaintiff continued to argue with the inmate and the situation became tense.  Given the tense situation, officers decided to move Plaintiff to administrative segregation, or "T-Unit."

According to Plaintiff, placement in T-Unit was a punitive assignment.  Unlike general population, the inmates in T-Unit were not allowed to smoke, work on the cleaning crew, or associate with fellow inmates.  They also were not permitted to attend Bible study, were only allowed in the day-room one at a time, and only certain cells were in a position to view the unit's television.  Plaintiff remained in T-unit for 34 days.

The Defendants testified that they placed Plaintiff in administrative segregation in the T-unit because he was unable or unwilling to adjust to the detention center's rules and order.  Defendant Scott testified that after these events, he prepared an "offense incident report" about Plaintiff's actions and not a disciplinary charge.  Then, Defendant Scott added, the responsibility for acting on the report was left to his supervisors.  Defendant Scott emphasized that Plaintiff and his "disruptive" comments were a "threat to the order and security" of the unit.  According to Defendant Scott, Plaintiff, who is "one of the brightest inmates" he has known, was particularly disruptive because

4

he knew "what to do and say" to instigate other inmates to cause problems for officers.

On January 8, 2009, once removed from the medical unit, officers placed Plaintiff's name on the list of inmates in administrative segregation. On the morning of January 14, 2009, officers conducted their weekly "classification committee" meeting and discussed Plaintiff's placement in administrative segregation. The committee reviewed the reports from the January 8, 2009 incidents and other pertinent information about Plaintiff's behavior while in the PCRDF. The committee determined that Plaintiff should remain in administrative segregation.[3]

After the morning meeting, Defendants Conners and Eddiemae Banks, both classification officers, met with Plaintiff to inform him of the committee's determination that he remain in administrative segregation. At that time, the inmate is given an opportunity to respond to the decision, although Defendants Conners and Banks both testified that Plaintiff "said nothing" when they informed him of the outcome of the staffing of his placement.

Defendants testified that Plaintiff's placement in the T-Unit was not punitive segregation. The Defendants stated that punitive segregation would have meant placement in the even more restrictive "U-Unit." Defendant Conners described the differences between administrative segregation and the punitive segregation that may be imposed on inmates who face a disciplinary charge. Disciplinary charges result from rule violations, she testified, and the inmate will receive written notice of the violation, a hearing on the matter, and the opportunity to present witnesses in his defense. Upon a conviction, the inmate may be sentenced to punitive isolation in the U-unit. Inmates in the U-Unit are not allowed to keep their mats during the day, may not purchase from the commissary, and have only limited access to amenities such as haircuts. There are no televisions

---

[3] Defendant Bailey Conners also testified that Plaintiff had just been released from a previous stint in administrative segregation at the time of these events.

in the U-unit, and the inmates are not entitled to earn good-time credits.  From the evidence presented at the hearing, including Plaintiff's testimony, Plaintiff was clearly not in punitive isolation.

## II.    Analysis

The remaining issue before the Court is whether Plaintiff Askew,  a pre-trial detainee, was entitled to due process before placement in administrative segregation.  Specifically, Plaintiff asserts that, when placed in administrative segregation, he was entitled to the same due process required for placement in punitive segregation as outlined by the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The Court finds that Plaintiff's argument is without merit and his Complaint should be dismissed.

The Due Process Clause of the United States Constitution prevents a pretrial detainee from being punished prior to an adjudication of guilt.  *Id*.  "We [therefore] begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged."  *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999).  *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir.1992)("Pretrial detainees are presumed innocent and may not be punished").  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  *Bell*, 441 U.S. at 537.  In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court must first determine "whether the restriction is based upon an express intent to inflict punishment."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045

6

(9th Cir. 2002) (citations omitted).  If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction."  *Id*.  In this regard, the United States Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned."  *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

Plaintiff believes he was entitled to written notice of the charges, time to prepare a defense, a written statement of the evidence relied on and the reasons for the disciplinary action, and the ability to call witnesses and present evidence in his defense.  *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 570 (1974).  However, the Constitution does not require that Plaintiff receive any such process for administrative matters.  In *Higgs v. Carver*, the United States Court of Appeals for the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons.  Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision. Or suppose, ... that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk. Again, no hearing would be required.  Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. ... In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

286 F.3d 437, 438 (7th Cir. 2002).

Here, the Court finds that the placement of Plaintiff in administrative segregation was a "managerial decision" motivated by concerns for the safety and security of the detention center. Both the Defendants' and Plaintiff's testimony about the events of January 8, 2009 reveal a potentially volatile situation.  Plaintiff admits he was unruly and arguing with officers.  He further precipitated events by engaging in a verbal altercation with another inmate.  In addition, officers had reason for general concern, given Plaintiff's history of being a "security risk" during his confinement at the PCRDF.

Defendants' actions after Plaintiff's placement in administrative segregation further support a finding that Plaintiff's placement was not punitive.  Defendants reviewed Plaintiff's status on a weekly basis.  He remained in administrative segregation for 34 days and it appears Defendants followed procedures of the PCRDF.  While the Court is mindful that officers may sometimes impermissibly use administrative segregation as a pretext for punishment, such is not the case here.

Finally, the Court finds that conditions of administrative segregation at the PCRDF  were not "much more restrictive" than those for the general population inmates.  The conditions Plaintiff experienced during his stint in administrative segregation were far less restrictive than those conditions imposed on inmates in punitive segregation.

Therefore, after listening to all the testimony and drawing appropriate inferences based on the credibility of the parties and their witnesses, the Court is not persuaded that Plaintiff has shown that his constitutional rights were violated by Defendants. Accordingly, the undersigned recommends that Plaintiff's complaint be dismissed with prejudice.

8

## **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Plaintiff's Complaint against Defendants be

DISMISSED with prejudice, and all pending motions be DENIED as moot.

DATED this <u>9th</u> day of December, 2009.


_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE